1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   NOEL VALDIVIA, SR.,

11                Petitioner,                    No. 2:05-CV-00416 ALA HC

12        vs.

13   JILL BROWN, et al.,

14                Respondents.            <u>ORDER</u>

15   _____/

16        Pending before the court are Noel Valdivia, Sr.'s ("Petitioner") application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254(a) (doc. 1), Respondents' Answer (doc. 16), and

18   Petitioner's Traverse (doc. 21).  Also before the court are the parties' briefs filed in response to

19   our December 18, 2007, order requesting additional briefing on the applicability of *Irons v.*

20   *Carey*, 505 F.3d 846 (9th Cir. 2007).  For the reasons stated below, Petitioner's application is

21   granted.

22                                         I

23        On July 10, 1980, Petitioner was involved in a robbery during which Charles Decker was

24   shot and killed.  In 1981, Petitioner pleaded guilty to first degree murder for his involvement in

25   that crime.  The Superior Court of San Joaquin County ("Superior Court") sentenced him to

26   twenty-five years to life, with the possibility of parole.  Petitioner's earliest parole date was

                                           1

1   October 11, 1995.

2          On June 1, 2004, the California Board of Prison Terms ("BPT") deemed Petitioner

3   unsuitable for parole.  Petitioner challenged this parole denial in a state habeas petition.  The

4   Superior Court of San Joaquin County denied the writ, concluding that "some" evidence

5   supported the BPT's decision.  The Superior Court also found that Petitioner's parole was given

6   due consideration.[1]  The California Court of Appeal summarily denied the state habeas petition

7   Petitioner filed in that court.  The California Supreme Court summarily denied Petitioner's

8   "petition for review" of the appellate court's decision.[2]

9          Petitioner's Section 2254 application alleges that the BPT's June 1, 2004, parole denial

10  violates the Due Process Clause of the Fourteenth Amendment.[3]

11                                                    II

12         An application for a writ of habeas corpus on behalf of a person in custody pursuant to a

13  state court judgment "shall not be granted with respect to any claim that was adjudicated on the

14  merits" in state court unless the adjudication of the claim:

15              (1)    resulted in a decision that was contrary to, or involved an
                       unreasonable application of, clearly established Federal
16                     law, as determined by the Supreme Court of the United

---

18      [1]  We look to the Superior Court's decision as the last reasoned state court opinion
    addressing Petitioner's arguments.  *See Franklin v. Johnson*, 290 F.3d 1223, 1233 n.3 (9th Cir.
19  2002) (explaining that when a subsequent appeal is denied without comment, a federal court
    must look to the last state court decision that actually addresses a claim).

20        [2]  "[T]he sole and proper remedy after denial of a petition for writ of habeas corpus by a
    superior court is to file a new petition with the Court of Appeal, which has original jurisdiction
21  in habeas corpus matters."  *In re Reed*, 33 Cal. 3d 914, 918 n.2 (1983), *overruled on other
    grounds as stated in In re Alva*, 33 Cal. 4th 254, 264 (2004).  "Further review may be sought in
22  [the California Supreme Court] either by a new petition for habeas corpus or, preferably, by a
    petition for hearing."  *Id.*  Petitioner appears to have incorrectly labeled the document he filed
23  with the California Supreme Court; the Supreme Court, however, did not correct this error, but
    rather summarily denied Petitioner's attempt to appeal the California Court of Appeal's decision.
24  This mistake does not affect our adjudication of Petitioner's application.

25        [3]  Petitioner alleges ten separate grounds for relief.  *See* Petr's Mem. of P. & A. at 1-2.
    However, each pertain to the manner in which the BPT denied his parole.  Therefore, we
26  construe each ground for relief as an argument that he did not receive due process.

                                                    2

1    States; or

2    (2)    resulted in a decision that was based on an unreasonable
       determination of the facts in light of  the evidence
3       presented in the State court proceeding.

4    28 U.S.C. § 2254(d).

5        In his response to our request for *Irons v. Carey* briefing, Petitioner asserts that pursuant

6    to *Irons* "there is nothing precluding the Court from granting the petition."  He reads *Irons* to (a)

7    establish his liberty interest in parole, (b) require that some evidence support the BPT's denial,

8    and (c) force the court to grant his petition because the BPT denied parole on the basis of his

9    commitment offense alone.

10                                              A

11        On January 8, 2008, the Court of Appeals for the Ninth Circuit decided *Hayward v.*

12    *Marshall*, 512 F.3d 536 (9th Cir. 2008), a case in which the Governor of California twice

13    reversed the BPT's determination that an inmate was suitable for parole.  "Under California law,

14    the Governor, in considering whether to reverse a grant of parole by the Board, must consider the

15    same factors the [BPT] is required to consider."  *Hayward*, 512 F.3d at 542.  The Governor's

16    decision to reverse a parole grant is assessed "under the same procedural due process principles

17    [courts] use to review challenges to the Board's denial of parole."  *Id.*  Therefore, *Hayward*'s due

18    process analysis guides our analysis of Petitioner's parole denial.[4]

19        The petitioner in *Hayward*, like the Petitioner in this case, challenged the evidence used

20    to justify his parole denial.  As in *Hayward*, we construe that allegation as a procedural due

21    process claim.  *See Hayward*, 512 F.3d at 542.  "'A procedural due process claim has two

22    distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and

23    (2) a denial of adequate procedural protections.'"  *See McQuillion v. Duncan*, 306 F.3d 895, 900

24    (9th Cir. 2002) (quoting *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971,

25
26        [4]  Hayward relies heavily on *Irons v. Carey*, which addressed the due process concerns
     implicated by a parole board's decision to deny parole.  *See Hayward*, 512 F.3d at 542-47.

1   982 (9th Cir. 1998)).

2          Under the compulsion of binding Ninth Circuit precedent, we conclude that (1)

3   "California prisoners have a liberty interest in parole," and (2) "a parole board's decision

4   deprives a prisoner of due process with respect to this interest if the board's decision is not

5   supported by some evidence in the record, or is otherwise arbitrary."  *Hayward*, 512 F.3d at 542

6   (internal quotation marks and citations omitted).

7                                                B

8          Next, we turn to the question of whether the procedural protections afforded Petitioner

9   were adequate. "'When we assess whether a state parole board's suitability determination was

10  supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and

11  regulations governing parole suitability determinations in the relevant state.'"  *Hayward*, 512

12  F.3d at 542 (quoting *Irons*, 505 F.3d at 851).  We must look to California law "'to determine the

13  findings that are necessary to deem a prisoner unsuitable for parole.'"  *Id.* (quoting *Irons*, 505

14  F.3d at 851).  Next, we "'must review the record in order to determine whether the state court

15  decision holding that these findings were supported by 'some evidence' . . . constituted an

16  unreasonable application of the 'some evidence' principle.'"  *Id.* (quoting *Irons*, 505 F.3d at

17  851).

18         Under that rubric, the "findings that are necessary to deem a prisoner unsuitable for

19  parole . . . are not that a particular factor or factors indicating unsuitability exist, but ***that a***

20  ***prisoner's release will unreasonably endanger public safety***."  *Id.* at 543 (internal quotation

21  marks and citations omitted) (emphasis added).  In fact, "'[s]ome evidence of the existence of a

22  particular factor does not necessarily equate to some evidence the parolee's release unreasonably

23  endangers public safety.'"  *Id.* (citation omitted).[5]

24  _____

25         [5] The factors *Hayward* refers to are the factors the BPT uses to determine "whether a
    prisoner is too dangerous to be suitable for parole."  512 F.3d at 543 (citing California Code of
26  Regulations, title 15, § 2402).  *Id.*  Factors tending to show unsuitability for parole are:

                                                4

1

The BPT's decision to deny Petitioner's parole was based on several factors.  First, the BPT found that the offense "was carried out in a very callous and preplanned manner."  BPT Decision at 66.  Next, the BPT concluded that the offense was carried out "in a manner that demonstrated a total disregard for human suffering."  *Id.*  Also, the BPT deemed the motive "very trivial in relation to the offense."  *Id.*  The BPT summarized Petitioner's pre-commitment behavior, finding that he had "a record of assaultive behavior . . . an escalating pattern of criminal conduct . . . a history of unstable and tumultuous relationships" and that "he failed to profit from society's previous attempts to correct his criminality."  *Id.* at 67.

In *Hayward*, the Ninth Circuit held that "[t]he Governor violated Hayward's due process rights by relying on the unchanging factor of motive for the commitment offense in reversing parole."  512 F.3d at 547.  The Court emphasized that "the unchanging factor of the gravity of Hayward's commitment offense had no predictive value regarding his suitability for parole."  *Id.* at 546.  Here, the BPT's reliance on unchanging factors is similarly insufficient to justify parole denial.  *See id.* at 545 (rejecting the Governor's reliance on unchanging factors as "some evidence" that a prisoner is unsuitable for parole).

The BPT also relied on the District Attorney's opposition to Petitioner's parole.  *See* BPT Decision at 68.  The District Attorney's opinion on its own is not some evidence that justifies a parole denial.  *See Hayward*, 512 F.3d at 545 n.9 ("the district attorney's opinion, without more, cannot be considered 'some evidence' . . . that supports the Governor's reversal of parole").

The BPT further noted that Petitioner's counselors' findings regarding the likelihood that

(1)  the prisoner committed the offense in an especially heinous, atrocious, or cruel manner;
(2)  the prisoner has a previous record of violence;
(3)  the prisoner has an unstable social history;
(4)  the prisoner has committed sadistic sex offenses;
(5)  the prisoner has a history of mental or psychological problems; and
(6)  the prisoner has engaged in serious misconduct while in prison.

*Id.* (citing § 2402(c)).

5

Petitioner would engage in violent activity upon parole were inconsistent, and did not

demonstrate that Petitioner had remained at a low risk level for a significant period of time.  For

example, the BPT noted that in 1994, Petitioner was considered to pose a  "very high to

moderate" degree of risk.  *See* BPT Decision at 68.  In 1997 and 1999, that rating was down to

"low."  *Id.* at 68, 69.  In 1998, the rating was "moderate."  *Id.* at 69.  In 2001, Petitioner's risk

was described as "unpredictable."  Therefore, the BPT concluded that "the prisoner's gains are

recent and he must demonstrate an ability to maintain his gains over an extended period of time."

*Id.*

However, this description of Petitioner's risk for engaging in violent behavior if paroled

is not supported by some evidence in the record.  Petitioner has attached psychological

evaluations prepared by mental health professionals, and were submitted to the BPT.  The

evaluations were completed in 1994, 1997, 1999, and 2001.

The 1994 evaluation notes that "[d]uring the observation in the institution, inmate has

psychiatrically improved greatly."  Petition Exhibit K-4.  "Violence potential outside a

controlled setting in the past is considered to have been serious, due to drug use and at present is

estimated to be below average."  *Id.*

The 1997 evaluation states that "[s]ince incarceration[,] records indicate that Mr.

Valdivia has demonstrated, consistently, a strong pattern of continuous growth and improvement

in virtually all areas."  Petition Exhibit K-3.  "Violence potential is much below average."  *Id.*

The 1999 evaluation indicates that in 1996, Petitioner's "[v]iolence potential if released

to the community was seen as far below average."  Petition Exhibit K-1.  In 1998, he was seen

by a psychiatrist who concluded that his violence potential was "well below average."  *Id.*  As of

1999, "there are several factors that would indicate a low risk for re-offense."  *Id.*

The 2001 evaluation indicates that "in the period since the last review, there has been no

change in Mr. Valdivia's mental health."  Petition Exhibit K.  The evaluation, prepared by a

psychologist, concludes:

> Overall, it is my professional opinion that Mr. Valdivia presents little danger of repeated violence in the community if paroled.  He has a practical, viable and solid plan for parole.  He has prepared himself spiritually and psychologically to be successful in the community.  If parole is granted, I believe Mr. Valdivia should do very well.  There are no further program needs at this time.

These reports demonstrate that the evidence before the BPT consistently demonstrated that Petitioner has posed a low risk of violence to the community in which he would be paroled.  Some evidence does not support the BPT's contrary findings.

We are left with the BPT's conclusions that "as late as 2001" a rule violation report was issued against Petitioner.  BPT Decision at 68.  The BPT's decision indicates that this report was at least partially dismissed.  *Id.* at 71-72.  There is no explanation as to what the violation consisted of, and it is not, on its own, some evidence that Petitioner's release will unreasonably endanger public safety.

Petitioner has already served the minimum number of years required for his sentence, and there is substantial evidence that Petitioner is rehabilitated.  For example, he has completed his GED and taken numerous general education college courses.  He has been certified in countless vocational education subjects.  He has participated in Alcoholics Anonymous.  He started an Apostolic Faith Church Fellowship in prison, conducted Bible study in the prison yard, and has overseen a weekly prayer meeting.  At the time of his parole hearing, he had a job waiting for him outside prison.  Based on the letters in the record before us, Petitioner has convinced the people who know him that he is a changed man.

In assessing whether some evidence indicates a parolee's release "unreasonably endangers public safety," we view the evidence "fairly and in its context."  *Hayward*, 512 F.3d at 544.  We cannot say that some evidence in the record supports a determination that Petitioner would unreasonably endanger public safety.  As a result, the BPT's denial of Petitioner's parole violated his due process rights.  *See id.* at 547 (holding that because "the Governor's reversal of parole . . . was not supported by any evidence that Hayward's release would threaten public

1    safety . . . the Governor's reversal of his parole thus violated his due process rights").

2                                                2

3          For similar reasons, we conclude that the Superior Court unreasonably applied the some

4    evidence standard.  The Superior Court unreasonably relied on two static factors–the manner in

5    which the crime was committed, and the pattern of criminal conduct that led to the commitment

6    offense–to conclude that some evidence justified parole denial.  The Superior Court also

7    concluded that the BPT was concerned with the likelihood that Petitioner would return to violent

8    behavior if paroled.  Yet, as explained above, the BPT's account of this factor is not supported

9    by some evidence.

10         The Superior Court further noted that the record before the BPT included several rule

11   violation reports.  It concedes that a 2001 report, presumably the same one cited by the BPT, was

12   "either fully dismissed or partially dismissed upon appeal."  The Superior Court mentions three

13   other violation reports as "some evidence" that the parole denial was justified: a report issued in

14   July 1994 for "participating in a work strike;" another issued in September 1998 for "failure to

15   obey orders;" and a third issued in May 2000 for "disobeying a medical lay-in order."

16   Petitioner's 1999 mental health evaluation, completed in February of 1999, mentions a "recently

17   obtained" rule violation report, but notes that it is "seen as minor and appears to be inconsistent

18   in nature and should not be considered a negative factor in the inmate's adjustment."  Petition

19   Exhibit K-1.  If the September 1998 rule violation cited by the Superior Court refers to the same

20   violation the evaluation mentions, it is not some evidence that Petitioner's release will

21   unreasonably endanger public safety.

22         Even if the September 1998 rule violation Petitioner committed is different from the one

23   his mental health evaluation discounts, the Superior Court still unreasonably applied the some

24   evidence standard.  Its description of the three rules violations allegedly relied on by the BPT do

25   not support the conclusion that Petitioner's release will unreasonably endanger public safety.  At

26   most, they lend some corroboration to a conclusion that one of the factors the BPT may consider,

1  that "the prisoner has engaged in serious misconduct while in prison," indicates parole

2  unsuitability.  *See* Cal. Code Regs. title 15, § 2402(c)(6).  Yet some evidence of the existence of

3  a particular California Code of Regulations factor applied by the BPT to decide if a prisoner is

4  suitable for parole "'does not necessarily equate to some evidence the parolee's release

5  unreasonably endangers public safety.'"  *Hayward,* 512 F.3d at 543 (citation omitted).  On its

6  own, and viewed in the context of the overwhelming evidence that Petitioner is rehabilitated, it

7  does not establish that Petitioner's release unreasonably endangers public safety.  As a result, the

8  Superior Court's conclusion that Petitioner was unsuitable for parole is an unreasonable

9  application of the some evidence standard.

10        IT IS HEREBY ORDERED that Petitioner's application for habeas corpus relief (doc. 1)

11  is GRANTED.  Within thirty days of the date of this order, the California Board of Parole

12  Hearings (formerly the Board of Prison Terms) must calculate a term for Petitioner in

13  accordance with the requirements of California Penal Code § 3041(a).  Within forty days of this

14  order, respondent must file a notice with the court identifying the date set for Petitioner's release.

15  /////

16  DATED: March 14, 2008

17                                    /s/ Arthur Alarcón
                                    UNITED STATES CIRCUIT JUDGE
18                                    Sitting by Designation

19

20

21

22

23

24

25

26